[No. 2897.]

## Cora McMahon *v.* The State.

1. EVIDENCE—PRACTICE.—It is a rule of evidence that all the circumstances of a transaction may be submitted to the jury, provided they afford any fair presumption or inference as to the matter in issue. See the opinion and the statement of the case for evidence *held* admissible under this rule.
2. FACT CASE.—See evidence sufficient to sustain a conviction for aggravated assault.

APPEAL from the District Court of McLennan. Tried below before the Hon. B. W. Rimes.

The indictment charged the appellant with an assault with intent to murder one William Wright, in McLennan county, Texas, on the eighteenth day of January, 1883. She was convicted of aggravated assault, and her punishment was affixed at a fine of two hundred and fifty dollars.

Garland DeGrafenried was the first witness for the State. He testified that he, Will Wright and W. E. Jackson went to a dance at the defendant's house, in Waco, on the night of January 18, 1883. While witness was sitting near a stove in the house, a negro named Houston, who was sitting near him, asked why he did not dance. Witness replied that he had been dancing. After some further exchange of words Houston called witness a d—d liar, and struck him in the face, knocking him back against the wall and stunning him for a moment. Recovering, the witness attempted to draw his pistol, but was prevented by Jackson. Houston covered witness with his pistol, telling witness that he would fire if witness drew a weapon. Houston then told another negro to bring his gun. The negro started, but was stopped by Wright, who said that the matter could be settled without a difficulty. Witness was then struggling with Jackson for possession of his pistol. About that time Wright came up behind witness and disarmed him. Witness and Wright had got to or near the door when the defendant entered the room with a shot gun, which she gave to Houston. Witness and Jackson then went out at the door, with Wright just behind them. Houston followed with the gun, and struck

Wright on the shoulder just as he was passing out of the door. Wright, who still had witness's pistol, turned as he was struck, caught the gun by the muzzle, and he and Houston fired at or about the same instant of time. Wright fired a second shot as Houston was falling. Witness did not know where Houston was struck. Wright was shot in the shoulder and breast with small shot. Witness's pistol was a large forty-five calibre Colt's improved revolver. Houston ridiculed witness before the difficulty, calling him a "kid," and accusing him of parting his hair in the middle. Defendant also laughed at the witness.

Cross-examined, the witness stated that he came to Waco from Durango, Falls county, on the day of the difficulty. He, Jackson and Wright took the train at Lorena together. They took no drinks until they got to Waco. They took one drink before supper, and one at the defendant's house, and no more.

W. E. Jackson's testimony did not vary materially from De-Grafenried's. His attention was first attracted to a difficulty by hearing something like a blow. When he turned he saw Houston standing with his pistol drawn on DeGrafenried, and the latter trying to draw his. Witness told Houston not to shoot, and commenced his effort to prevent DeGrafenried from drawing his pistol. DeGrafenried said, struggling hard to get his pistol: "The d—d nigger struck me, and I will kill him." Houston kept his pistol presented, and seemed to be trying to fire over witness's shoulder. He said that he would kill DeGrafenried if the latter drew a weapon. About that time Houston told a negro to bring the gun. Wright interfered with the negro, saying he was for peace. The defendant then spoke up, saying she would get the gun. Witness continued to hold DeGrafenried, the two working toward the door, and Houston following with his pistol drawn, threatening to kill DeGrafenried if he drew his pistol. Wright disarmed DeGrafenried from behind, and said to Houston: "Now, you would not shoot an unarmed man." Defendant just at this time gave Houston the gun. Witness and Wright passed out. The shooting and attendant circumstances were narrated as they had been by DeGrafenried. When Houston struck Wright with the gun, the defendant was standing near and told Houston that she would see him out.

The testimony of William Wright was substantially the same as that of W. E. Jackson. At this point the State closed.

Hattie Taylor was the first witness for the defendant. She corroborated the narratives of the State's witnesses up to the ap-

pearance of the defendant with the gun, except that she said nothing about Houston calling for the gun, or defendant saying that she would get it. When Houston saw defendant with the gun, he ran to her, grasped the gun, and by the use of considerable force, managed to wrench it from her hands. Houston, having secured the gun, started toward the door where Wright was standing. Defendant caught Houston by the coat tail and told him not to go outside of the house with the gun, but to remain inside with it and defend her and her property. As Houston approached the door he struck at DeGrafenried with the gun. Wright caught the gun, and two shots, one from Wright's pistol and one from Houston's gun, were fired almost the same instant, the pistol firing first. Houston was shot through the heart and killed. Witness ran out of the room when the difficulty began, but stopped in a position where she could see and hear, through an open window, all that transpired. Houston was a musician in the employ of the defendant.

Gus Gurley, another musician in the employ of the defendant, corroborated the statement of Hattie Taylor up to the point when defendant told Houston not to leave the room, but to remain and defend himself and her possessions. He testified nothing as to what subsequently transpired.

W. W. Evans testified for the State, in rebuttal, that on the morning after the difficulty he held an inquest over the body of Houston. Cora McMahon testified before the inquest that at the time of the difficulty she brought the gun into the dance hall. She did not testify that she gave it to Houston.

It was agreed by counsel that the following testimony was also made in the trial: "That, being wounded in the left breast by the shot from Houston's gun, Wright was confined to his bed for months, and was sick two months longer; that during the difficulty the defendant cursed and swore at Wright, Jackson and DeGrafenried, 'charged around,' and that when she handed the gun to Houston she said: 'I'll be with you,' advanced to the door and said: 'I'll stand by you,' and stopped in the door, holding in her hand the pistol thrown down by Houston, which, however, she made no attempt to use; that the boys, Wright, Jackson and DeGrafenried had but one pistol between them, which belonged to the latter; that the house belonged to the defendant, and was a bawdy house."

In addition to the question considered in the opinion of the

court, the motion for new trial complained that the charge of the court was erroneous in several particulars.

*J. M. Johnson* and *F. M. Makeig*, for the appellant.

*J. H. Burts*, Assistant Attorney General, for the State.

WHITE, PRESIDING JUDGE. Objection was made to the questions asked and answers given by the witness DeGrafenried as to "what occurred between DeGrafenried and deceased, Houston, at the commencement of the difficulty." It is insisted that "it was error to permit the questions and answers, because the immediate difficulty between Houston and DeGrafenried, and the conduct of appellant McMahon, had no present connection with nor reached the subsequent rencounter between Houston and Wright. That there should have been some proof first connecting Houston, Wright and appellant at and with the commencement of the *original* difficulty, or some *intentional* act to bring the first in harmony with the last rencounter."

Appellant was charged with an assault with intent to murder Wright, and it is claimed that all she did and said of an inculpatory character was said and done before Wright became a participant in the difficulty, and that the prosecution should be more limited by the charge to proofs of *intent* toward Wright alone. This position is fully answered by the fact that the difficulty between Houston and DeGrafenried, and the shooting between Houston and Wright resulting in the killing of the former. and wounding of the latter, were parts of one entire transaction—were circumstances and *res gestæ* indissolubly linked together, and necessary to elucidate and explain the transaction. Being connected parts of one entire transaction, the evidence was admissible. (Whart. Crim. Evid., 8 ed., sec. 31; *Heath v. Comm.*, 1 Robins's Rep., Va., 735.) All the circumstances of a transaction may be submitted to the jury, provided they afford any fair presumption or inference as to the matter in issue. (1 Starkie on Evid., 39; Roscoe's Evid., pp. 74, *et seq.; Keener v. The State*, 18 Ga., 194; *s. c.*, Harrigan & Thompson Cases, Self-defense, 539.)

It is shown by the evidence that Wright, up to the time he was struck with the gun by Houston, was acting the part of a peacemaker, doing all he could to quell the row, and had succeeded in getting DeGrafenried out of the door of the house,

when he was struck by Houston with the gun brought by appellant. On the other hand, during "the difficulty" it is proven that defendant cursed and swore at Wright, DeGrafenried and Jackson, and "charged around," and that she said, when she handed the gun to Houston, "I'll be with you," and advanced toward the door and said, "I'll stand by you," and stopped in the door with a pistol in her hand — the one thrown down by Houston—but did not shoot, and did not attempt to do anything with it. But for her acts and conduct in going for and bringing the gun, cursing the parties, giving the gun to Houston, and encouraging him in the prosecution of the difficulty, it is altogether probable that the difficulty would have ended when Wright succeeded in getting DeGrafenried out of the door; that Houston would never have struck or shot Wright with the gun, nor been himself killed by Wright. Judged by her acts and conduct, the *animus* of defendant and her intent to injure appear to have been directed toward all the parties, and to one as much as another.

A very able and ingenious brief has been filed by counsel for appellant in this case. But the premises assumed, in our opinion, are not warranted by the facts, and hence we cannot concur in the conclusions arrived at.

Several points are made with reference to supposed errors in the charge of the court. Understanding the facts as we do, the charge appears to us as an unobjectionable, plain and fair presentation of the law of the case.

We find no error requiring a reversal of the judgment, and it is therefore affirmed.

*Affirmed.*

Opinion delivered May 31, 1884.